UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00174-TBR

MARK A. JACKSON,                                                                  PLAINTIFF

v.

JAMES COYNE, *et. al.*,                                                   DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants James Coyne and Heather Horn's motion for summary judgment, [DN 17.] Plaintiff Mark Johnson responded, [DN 24], and Defendants replied, [DN 25.] The Court ordered the parties to file supplemental briefing, [DN 28], which they did, [DN 30; DN 32.] For the reasons discussed in detail below, the Court will deny Defendants' motion for summary judgment.

STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law.' " *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

The moving party must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the nonmovant's claim or defense. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex*, 477 U.S. at 324). Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex*, 477 U.S. at 324). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). Nor will mere speculation suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

Plaintiff Mark Jackson, a *pro se* prisoner, brought the instant lawsuit alleging that Defendants, who are employed at the Kentucky State Reformatory ("KSR"), violated his rights by improperly denying him access to the courts and legal mail services and by reading his legal mail, including court documents, outside of his presence. [DN 1.] Defendants filed the instant motion for summary judgment moving for dismissal of Jackson's claims on the sole ground that Jackson failed to exhaust his administrative remedies. [DN 17 at 2–3.]

The Prison Litigation Reform Act of 1995 requires a prisoner to exhaust all available administrative remedies before filing any action "with respect to prison conditions" under 42 U.S.C. § 1983 or any other federal law. 42 U.S.C. § 1997e(a). That exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *accord Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999). Exhaustion is mandatory and the remedies provided "need not meet federal standards, nor must they be 'plain, speedy, or effective.' " *Porter*, 534 U.S. at 524, 122 S.Ct. 983 (quoting *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "Proper exhaustion demands compliance with [the prison's] deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence. *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

In their motion for summary judgment, Defendants contend that Jackson failed to exhaust his administrative remedies, which, pursuant to the Kentucky Corrections Policies and Procedures for Inmate Grievance Procedure ("CPPs"), begins with the filing of an inmate grievance form and ends with an appeal to the Commissioner of the Department of Corrections. [*See* DN 17-2.] Defendants argue that, because there was never an "appeal of a grievance to the Commissioner, Plaintiff did not properly exhaust his administrative remedies." [DN 17-1 at 3.]

Jackson does not dispute that he never saw the grievance process all the way through to an appeal to the Commissioner. Jackson argues, however, that he did fill out a grievance form on January 26, 2017, but that he withdrew the grievance when he was threatened by an inmate grievance aide, Howard Hawkins, who "stated he would cause harm to plaintiff if he didn't sign

3

grievance and dismiss." [DN 24 at 1.] Indeed, Defendants attached this grievance form as an exhibit to their motion for summary judgment. [DN 17-4.] The form, titled "Grievance Information Form," was filled out and signed by Jackson on January 26, 2017 in black ink. [*Id.*] Therein, Jackson recites his complaints about Defendants' alleged unauthorized viewing of his legal mail. [*Id.*] Below the lines for the grievant's signature and date are lines to be filled in with the "Grievance Aide's Signature" and "Date Received." [*Id.*] Howard Hawkins signed on the signature line and wrote January 27, 2017 as the date received in bright blue ink. [*Id.*] Below, in the same bright blue ink, is an unintelligible signature and the words "withdrawn 1-27-18." [*Id.*] Below reads "closed – resolved prior to filing." [*Id.*]

According to Jackson, he "was unable to use the grievance procedure or appeal due to threats and his life [being] in danger." [DN 24 at 2.] Jackson made this same argument in his Complaint, in which he stated that he "filed a grievance and was forced to withdraw it due to threats." [DN 1 at 5.] Jackson claims that, after he withdrew his grievance, he attempted to contact the Ombudsman's office for the Kentucky Department of Corrections, but that he never received a response. [DN 24 at 2.] Jackson contends that his "understanding [was that] the Ombudsman office is for continuing resolution of issues, problems or complaints of state prisoners regard[ing] living conditions and treatment" and that the "Ombudsman investigates complaint[s] where inmate has failed to get satisfactory results through available institution channels." [*Id.*]

In their reply, Defendants state that, even if Jackson was threatened by Hawkins, a grievance aide is simply a fellow inmate, not Corrections staff. [DN 25 at 2.] According to Defendants, "[a] threat from a fellow inmate does not excuse the requirement that Plaintiff exhaust his administrative remedies." [*Id.*] Additionally, Defendants argue that Jackson provided

4

insufficient evidence that Hawkins actually threatened him or that the alleged threat was related to Jackson's grievance. [*Id.*]

The Supreme Court of the United States recently identified certain circumstances under which the exhaustion requirement of "§ 1997e(a) poses no bar" to a prisoner's lawsuit. *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016). Among these circumstances is when the administrative procedure becomes effectively "unavailable" to prisoners because "prison administrators thwart[ed] inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

In a Memorandum Opinion and Order dated January 16, 2018, the Court noted that Defendants essentially argue that an inmate working as a grievance aide does not equate to a "prison administrator" who could thwart Jackson's attempt to file a grievance. *See Ross*, 136 S. Ct. at 160. After finding that it had insufficient information to make that determination at that time, however, the Court requested supplemental briefing from Defendants "explaining the position of 'grievance aide' at KSR and the extent to which grievance aides may act as agents of KSR." [DN 28 at 3.] Defendants submitted a supplemental brief, [DN 30], and Jackson filed a response, [DN 32.] Having reviewed the parties' briefs and the applicable case law, the Court finds that Defendants have not carried their burden of proving their affirmative defense of failure to exhaust administrative remedies by a preponderance of the evidence, as is required of them to prevail at summary judgment. *Lee*, 789 F.3d at 677 (citing *Jones*, 549 U.S. at 216).

a) **Defendants' Supplemental Brief**

In their supplemental brief, Defendants point to the CPPs, which define "grievance aide" as "an inmate appointed to assist an inmate with filing a grievance and assist the Grievance Coordinator with assigned tasks." [DN 30 at 2; DN 17-2 at 1.] The "grievance coordinator" is

defined as "a staff person appointed by the Warden to monitor and regulate the operation of the inmate grievance procedure." [DN 17-2 at 1.] Defendants attach the affidavit of Everett Thomas, the grievance coordinator at the Kentucky State Reformatory ("KSR"). [DN 30-1.] Thomas first recites the above definitions of grievance aide and grievance coordinator, and then states simply that "grievance aides are inmates, not staff nor agents of the institution." [*Id.*]

Next, Defendants argue that "[e]ven if this Court gave some weight to Plaintiff's argument, there is nothing to support his assertion that a threat by an inmate grievance aide made the grievance process 'unavailable'" as that term is used in *Ross*. [DN 30 at 3.] Rather, Defendants argue that "[w]hile CPP 14.6 provides that a grievance aide's role is to assist and/or counsel inmates in the grievance process, it does not mandate the participation of the grievance aide." [*Id.*] According to Defendants, "[i]t is the grievance coordinator, not the grievance aide, who is involved in determining how the grievance proceeds." [*Id.*] Defendants contend that, "[i]n every situation where the grievance aide's participation in the grievance process is mentioned, alternative participants in the process such as the grievance coordinator or staff members are also listed, making it clear that the grievance aide is neither the first nor the last word on inmate grievances." [*Id.*]

**b) Jackson's Response to Defendants' Supplemental Brief**

In his response, Jackson emphasizes the portion of the grievance aide definition which states that grievance aides "<u>assist the Grievance Coordinator with assigned tasks</u>." [DN 32 at 1 (emphasis in original).] Other portions of the CPPs, some of which Jackson cites and some of which he does not, also point to a finding that a grievance aide could be a sort of agent of the grievance coordinator. For instance, the CPPs provide that one of a grievance aide's job duties is to "[f]orward the written grievance to the Grievance Coordinator." [DN 17-2 at 6.] Further,

6

"[a]fter a grievance has been properly filed, an attempt to resolve the problem shall be made through informal means." [*Id.* at 9.] Such "[i]nformal resolution may involve the Grievance Aide, Grievance Coordinator, department head, *or* institutional staff." [*Id.* (emphasis added).] "The Grievance Aide, Grievance Coordinator, *or other person acting with the Coordinator's approval*, who is handling the informal resolution step, shall have ten (10) business days within which to attempt to resolve the grievance informally." [DN 17-2 at 9.] These excerpts indicate that a grievance aide has the ability and, by extension, the discretion, to forward a written grievance to the Grievance Coordinator and to handle the grievance through "informal resolution." Moreover, the fact that the grievance aide is included in a list of people who "act[ ] with the Coordinator's approval" also suggests that a grievance aide could be staff or an agent of the Grievance Coordinator.

Jackson also responds to Defendants' argument that he could have proceeded with the administrative process *without* a grievance aide. According to Jackson, it is impossible to proceed without a grievance aide when confined to a segregation unit, which Jackson has been for nearly sixteen months. [DN 32 at 2.] Jackson claims that, "per Ky Dept. of corrections policy you have to use a Grievance Aide in the segregation unit. no matter what. no way around it." [*Id.*] The Court did not request a reply brief in the Order in which it requested a supplemental brief from Defendants, so Defendants were not able to respond to this assertion. However, the fact that the grievance form Jackson filled out has blank spaces for the grievance aide to sign and date certainly lends support to Jackson's argument that the grievance aide's participation was required to submit a grievance form in this case.

Next, Jackson argues that, when inmates such as Hawkins have jobs in the Kentucky Department of Corrections, they have "access to documents, areas other inmates don't have and

7

can speak to staff whom he chooses with excuse for grievance reasons and *does perform same duty as Grievance Coordinator.*" [*Id.* (emphasis added).] Jackson further alleges that Hawkins "has [a] closer bond with staff th[a]n other inmates" since he interacts with the staff more than other inmates. [*Id.*] Finally, Jackson alleges that grievance aides like Hawkins are paid by the State of Kentucky for their services. [*Id.*] The Court notes that "[e]ach of [Jackson]'s pleadings was signed under penalty of perjury, and is therefore 'sufficient to qualify as an affidavit for the purposes of summary judgment.'" *Belser v. James*, No. 16-2578, 2017 WL 5479595, at *2 (6th Cir. June 6, 2017), cert. denied, 138 S. Ct. 637 (2018) (quoting *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992)).

c) **Analysis**

"[W]hen prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation . . . such interference with an inmate's pursuit of relief renders the administrative process unavailable. And then . . . § 1997e(a) poses no bar" to an inmate's suit. *Ross*, 136 S. Ct. at 1860 (Citing with approval *Davis v. Fernandez,* 798 F.3d 290, 296 (5th Cir. 2015) ("Davis testifies that jail staff told him that the grievance process includes only a single step—that he had no option to appeal—and he, relying on that misrepresentation, did not file an appeal. Based on the record of this case, we see no reason that Davis should not be entitled to rely on the representations of his jailers."); *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013) ("A remedy is not available, therefore, to a prisoner prevented by threats or other intimidation by prison personnel from seeking an administrative remedy by filing a grievance in the prescribed form and within the prescribed deadline."); *Tuckel v. Grover*, 660 F.3d 1249, 1252–53 (10th Cir. 2011) ("We find it difficult to accept the proposition that an administrative remedy is available in any meaningful sense if its use will

result in serious retaliation and bodily harm. We therefore conclude that when a prison official inhibits an inmate from utilizing an administrative process through threats or intimidation, that process can no longer be said to be 'available.'"); *Goebert v. Lee Cty.*, 510 F.3d 1312, 1323 (11th Cir. 2007) ("Having kept Goebert in the dark about the path she was required to follow, the defendants should not benefit from her inability to find her way.")).

*Ross* does not define "prison administrator." In this case, however, there is at least some evidence to suggest that a KSR grievance aide's responsibilities are so involved in the grievance process that a grievance aide could fall within the definition of prison administrator. Moreover, there is some evidence to suggest that Hawkins could have been acting as a sort of "agent" of prison administrators such that his actions could be imputed to those of a prison administrator for purposes of *Ross*. The Sixth Circuit has explained certain situations in which a principal may be liable for the acts of an agent:

> First, a principal may be vicariously liable for an agent's tortious conduct if the principal expressly or implicitly authorized the conduct . . . Second, a principal may be vicariously liable for an agent's torts under a *respondeat superior* theory. Under a *respondeat superior* rule, a principal is only held vicariously liable for torts committed by an agent when the agent acts for the benefit of his principal within the scope of his employment. Third, a principal may be vicariously liable for an agent's tortious conduct based upon an apparent authority theory, if the principal cloaked its agent with apparent authority, i.e., held the agent out to third parties as possessing sufficient authority to commit the particular act in question, and there was reliance upon the apparent authority.

*Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998) (internal citations omitted). In the Court's view, a vicarious liability theory or an apparent agency theory most closely fit an argument that Hawkins could have been acting as an agent of the Grievance Coordinator at the time he allegedly threatened Jackson about his grievance. In the context of vicarious liability, in Kentucky, "in general, ... the master is held liable for any intentional tort

committed by the servant where its purpose, however misguided, *is wholly or in part to further the master's business.*" *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005) (emphasis added).

Next, in a recent decision, the Kentucky Supreme Court helpfully explained apparent agency as follows:

> "Apparent authority ... is not actual authority but is the authority the agent is held out by the principal as possessing. It is a matter of appearances on which third parties comes to rely." "An agent is said to have apparent authority to enter transactions on his or her principal's behalf with a third party when the principal has manifested to the third party that the agent is so authorized, and the third party reasonably relies on that manifestation." "That a principal did not approve an individual transaction does not change the fact that an agent can have apparent authority."

*Ford v. Baerg*, 532 S.W.3d 638, 642 (Ky. 2017). Viewing the record in the light most favorable to Jackson, the Court finds that genuine disputes of material fact exist as to whether 1) Hawkins did threaten Jackson in order to get him to withdraw his grievance and, if so, 2) whether Hawkins qualifies as a "prison administrator" as that term is used in *Ross*, or 3) whether Hawkins had the apparent authority to take that action on behalf of a prison administrator, or 4) whether Hawkins was an agent acting with the intent to further the business of prison administrators.

Several considerations lead the Court to the conclusion that genuine disputes of fact exist here. First, Jackson did indeed fill out a grievance form on January 26, 2017, which Hawkins signed that he received the following day, however the form has a notation stating that the grievance was also withdrawn that day. [DN 17-4 at 1.] Second, the fact that the grievance form includes blank spaces for the grievance aide to sign and date tends to indicate that the grievance aide's participation was required to submit a grievance. [*See id.*] Third, the CPPs provide that the grievance coordinator must advertise the position of grievance aide to inmates, choose grievance aides, and that such aides shall "[a]ssist the inmate in the informal resolution process as outlined

10

by institutional procedure," "[c]ounsel the inmate concerning the grievance process," "[a]ssist the inmate in the preparation of grievance documents as needed," and "[f]orward the written grievance to the Grievance Coordinator." [*Id.* at 5–6.] Additionally, grievance "aides . . . shall follow staff instructions concerning providing access or visits to specialized units, such as segregation," where Jackson was housed at the time he filled out his grievance form. [*Id.* at 6.] This, too, suggests that grievance aides have several responsibilities that may elevate them to the level of "prison administrator." Moreover, grievance aides can participate in the "informal resolution" step. "Informal resolution may involve the Grievance Aide, Grievance Coordinator, department head, or institutional staff." [*Id.* at 9.] The fact that the grievance aide has some of the same responsibilities as the grievance coordinator and even the department head or institutional staff with regard to informal resolution also could suggest that grievance aides are prison administrators or agents of prison administrators. Moreover, "grievance aide" is included in a list of people who "act[] with the Coordinator's approval," which also suggests that the grievance aide is an arm of the grievance coordinator, who is certainly prison staff.

In *Ross*, the Supreme Court explained that, "[i]n determining if a remedy is actually 'available,' the Court must take into account 'the real-world workings of prison grievance systems' and examine whether the remedy, while 'officially on the books, is not capable of use to obtain relief.'" *Morgan et. al. v. Commonwealth Of Kentucky, et al.*, No. 3:17-CV-00474-JHM, 2018 WL 715468, at *2 (W.D. Ky. Feb. 5, 2018) (quoting *Ross*, 136 S. Ct. at 1859). Here, if Hawkins was acting either as a prison administrator or an agent of a prison administrator, and Hawkins did in fact threaten Jackson with bodily harm (as Jackson's sworn testimony asserts), it is quite possible that the grievance process was "not capable of use to obtain relief." *Id. See Davis v. Mason*, No. 16-2707, 2018 WL 732396, at *4 (7th Cir. Feb. 6, 2018) ("When the record

11

is viewed in the light most favorable to Davis, a reasonable fact finder could conclude that he did all that was required of him yet was prevented from filing his grievance because of the mixed or improper instructions from the grievance coordinator."); *Stearns v. Inmate Servs. Corp.*, 2017 WL 3381528, at *3 (E.D. Ark. July 18, 2017), *report and recommendation adopted*, No. 3:16CV00339-BRW-JJV, 2017 WL 3381365 (E.D. Ark. Aug. 4, 2017) ("Plaintiff has submitted evidence demonstrating Defendant's agents thwarted him from taking advantage of the grievance process, specifically by misrepresentation . . . According to Plaintiff's Affidavit, despite his repeated complaints, Defendant's agents did not inform him that a grievance procedure existed."); *Carranza v. Brown*, 2017 WL 3190567, at *14 (S.D. Cal. July 26, 2017) ("This sworn testimony, when viewed in the light most favorable to Plaintiff, satisfies Plaintiff's burden of production . . . insofar as it shows that administrative remedies—at least with respect to Count 2-5—were not 'available' to him because RJD officials 'thwarted the effective invocation of the administrative process through threats, game-playing, or misrepresentations, ... in [his] individual case.'").

Furthermore, Defendants have not submitted any evidence to suggest that the threat did not occur, such as an affidavit from Hawkins stating as much, or to suggest an alternate reason for why Jackson withdrew the grievance, such as an affidavit from another administrator with firsthand knowledge as to why the grievance was withdrawn or how it was "resolved." *See Hammler v. Davis*, 2017 WL 735737, at *9 (E.D. Cal. Feb. 23, 2017), *report and recommendation adopted*, No. 214CV2073MCEACP, 2017 WL 1093968 (E.D. Cal. Mar. 23, 2017) ("Defendant has failed to produce any evidence conclusively rebutting . . . plaintiff's contentions or the credibility of his evidence. Most significantly, defendant has not submitted declarations from C/O Snyder or Lt. Calhoun regarding the events at issue. This failure is fatal to

the motion for summary judgment, because the burden to establish non-exhaustion remains defendant's."). True, Thomas states in his affidavit that "grievance aides are inmates, not staff nor agents of the institution." [DN 30-1.] However, he does not expand upon that statement or cite any evidence in support of it. Moreover, when considered along with Jackson's arguments and the statements in the CPPs about the job duties of grievance aides, Thomas's statement at most creates a dispute of fact as to whether grievance aides are akin to prison administrators or agents thereof.

As the Court noted above, "the failure to exhaust 'must be established by the defendants,'" *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Napier v. Laurel County, Ky.*, 636 F.3d 218, 225 (6th Cir. 2011)). For the reasons explained in this Memorandum Opinion, the Court finds that genuine disputes of material fact exist as to whether the administrative process was effectively "unavailable" to Jackson within the meaning of *Ross*. Therefore, defendants have not carried their "burden of proving that [Jackson] has not exhausted his administrative remedies" at this stage. *Id.* at 456. Accordingly, Defendants' motion for summary judgment must be denied, and an evidentiary hearing is necessary on the issue of exhaustion. *See Cohron v. City of Louisville, Ky.*, No. CIV.A. 06-570-C, 2012 WL 1015789, at *1 (W.D. Ky. Mar. 22, 2012), *aff'd*, 530 F. App'x 534 (6th Cir. 2013) ("An evidentiary hearing is necessary to determine whether Cohron exhausted his administrative remedies.").

However, the Court notes that Defendants moved for summary judgment only on the affirmative defense that Jackson failed to exhaust his administrative remedies; Defendants did not move for summary judgment on the merits of Jackson's claims. [*See* DN 17.] If Defendants wish to file a motion for summary judgment addressing the merits of Jackson's claims, the Court will allow the United States to do so within twenty-eight days of the entry of this Memorandum

Opinion and Order. Only after the Court determines whether Jackson's claims survive summary judgment on the merits will the Court schedule the evidentiary hearing on the exhaustion issue.

CONCLUSION

For the reasons discussed herein, Defendants' motion for summary judgment, [DN 17], is **DENIED**. Jackson's motion for extension and court order, [DN 31], is now **DENIED AS MOOT**. The United States has **twenty-eight (28) days** from the entry of this Order to file a second motion for summary judgment addressing the merits of Jackson's claims. If the United States chooses to file such a motion, Jackson shall file a response **within twenty-one (21) days.** The United States must then **reply within seven (7) days**.

**IT IS SO ORDERED**.

Date:

cc: Counsel